IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BRADLEY FREEMAN,

      Petitioner,

v.                                                                  Civ. No. 20-910 JB/SCY

ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO,

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This Proposed Findings and Recommended Disposition ("PFRD") addresses Petitioner Bradley Freeman's "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody." Doc. 1.[1] Mr. Freeman argues that the state court's denial of his motion to withdraw his guilty plea violated his due process under *Brady v. Maryland*. The United States Supreme Court, however, has never held that these due process rights are implicated at the time a criminal defendant enters a guilty plea. Further, the Supreme Court has affirmatively held that the government has no obligation to disclose, before a defendant pleads guilty, information that bears on credibility. The information Mr. Freeman complains the State suppressed falls into the credibility category. Accordingly, I recommend denying Mr. Freeman's habeas petition.

## BACKGROUND

On May 8, 2017, the State charged Mr. Freeman with one count of distribution of a controlled substance for allegedly selling ten pills of Alprazolam, a prescription drug, to Joshua

---

[1] The Honorable James O. Browning referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 2.

Marchand, an undercover law enforcement officer. Doc. 14-1 at 90-91[2] (Ex. S, Defendant's statement of facts in response to summary dismissal with the New Mexico Court of Appeals). Mr. Freeman pleaded guilty on January 26, 2018 to distribution of a controlled substance, a third-degree felony. Doc. 14-1 at 1-6 (Ex. A). The New Mexico state district court sentenced him to probation for a term of three years (minus 95 days), with conditions such as requiring full-time employment, successful completion of a counseling or treatment program, and random drug and alcohol tests. *Id.* at 7-11 (Ex. B).

In March 2018, the State filed a petition for probation revocation after Mr. Freeman violated his conditions of release by not reporting to his probation officer, moving residences without permission, and consuming illicit drugs. *Id.* at 12-16 (Ex. C). On October 12, 2018, Mr. Freeman pleaded no contest to violating the terms of his probation. *Id.* at 17-19 (Ex. D); *id.* at 20-21 (Ex. E). The state district court sentenced him to 3 years' incarceration with all but 10 days suspended while he returned to probation. *Id.* at 17-18 (Ex. D).

The following week, Mr. Freeman moved to withdraw his initial guilty plea (on the drug charge) on the grounds that the State disclosed new information about its primary witness, Deputy Marchand. *Id.* at 22-23 (Ex. F). Specifically, Mr. Freeman alleged that "[n]ew information regarding the State's primary witness, Joshua Marchand was disclosed by the State on August 13, 2018 in the form of a Nolle filed in numerous cases with other Defendant[s] who had not plead or gone to trial." *Id.* at 22 (Ex. F). He elaborated that "[t]he Nolle included detailed information regarding Marchand's methods including his use of drugs with people who were then indicted on drug charges as well as concerns from law enforcement officers regarding his handling of evidence and other such issues." *Id.*

---

[2] The Court cites the Bates numbers on the exhibits, attached as Doc. 14-1.

The state trial court held a hearing on March 8, 2019, *id.* at 25 (Ex. H), during which Mr. Freeman's counsel argued that, in light of new evidence, Mr. Freeman's plea was not knowing or intelligently made and he should be able to present an entrapment defense. Doc. 7-3 at 5-6, 8, 10 (transcript). The court orally denied the motion, finding that Mr. Freeman's plea was knowing and voluntary because Mr. Freeman knew about his entrapment defense at the time he entered his plea and still chose to enter the plea. Doc. 7-3 at 19-21; *see also* Doc. 14-1 at 79-80 (Ex. Q, Order Denying Defendant's Motion to Withdraw Plea).

Upon denial of the motion to withdraw, Mr. Freeman appealed to the New Mexico Court of Appeals. *Id.* at 26-31 (Ex. I). In his amended docketing statement,[3] Mr. Freeman, through counsel, presented one issue: "Whether the district court erred in denying Mr. Freeman to withdraw his guilty plea." *Id.* at 73 (Ex. O, amended docketing statement); *id.* at 58 (Ex. L, appointment of counsel on appeal). In August 2019, the New Mexico Court of Appeals proposed dismissing the appeal for lack of jurisdiction because the state trial court had not yet entered a written order on the motion to withdraw and because the court of appeals likely did not have jurisdiction to review a post-conviction motion. *Id.* at 76-78 (Ex. P). Thereafter, the state trial court entered a written order denying Mr. Freeman's motion to withdraw, *id.* at 79-80 (Ex. Q), and Mr. Freeman filed a Memorandum in Opposition to Proposed Summary Dismissal with the court of appeals, *id.* at 89-120 (Ex. S), and moved to supplement the record proper, *id.* at 121-22 (Ex. T).

In his memorandum in opposition, Mr. Freeman requested that the court of appeals either (1) reverse the trial court and find that his guilty plea was not knowing and voluntary based on

---

[3] Mr. Freeman filed his original docketing statement on April 16, 2019. Doc. 14-1 at 51-57 (Ex. K). The New Mexico Court of Appeals found the statement did not adequately comply with the Rules of Appellate Procedure and ordered an amended docketing statement. *Id.* at 63-70 (Ex. N).

3

the State's failure to disclose exculpatory evidence during plea negations, or (2) treat the appeal as an appeal from the denial of a writ of habeas corpus, treat the memorandum in opposition as a petition for writ of certiorari, and transfer the case to the New Mexico Supreme Court. *Id.* at 89-120 (Ex. S). The court of appeals granted Mr. Freeman's request to supplement the record, *id.* at 123-26 (Ex. U) and accepted the latter route, viewing the motion to withdraw as a habeas petition and transferring the appeal to the New Mexico Supreme Court, *id.* at 127-30 (Ex. V).

The New Mexico Supreme Court accepted the transfer on April 17, 2020, treated Mr. Freeman's memorandum in opposition as a petition for a writ of certiorari, and ordered a response. *Id.* at 131-32 (Ex. W). After receiving a response from the State, *id.* at 133-43 (Ex. X), the New Mexico Supreme Court denied Mr. Freeman's petition for writ of certiorari on May 13, 2020, *id.* at 144 (Ex. Y). It likewise denied Mr. Freeman's motion for rehearing. *Id.* at 145-46 (Ex. Z, motion for rehearing); *id.* at 147-60 (Ex. AA, brief in support); *id.* at 161 (Ex. BB, order denying rehearing).

On October 19, 2020, Mr. Freeman, proceeding through counsel, filed a Petition for Writ of Certiorari with the United States Supreme Court, seeking to appeal the decision of the New Mexico Supreme Court. Doc. 14-1 at 162-87 (Ex. CC). That petition presented one question: "Does the Constitution require, before entering into a binding plea agreement with a criminal defendant, material evidence of an affirmative defense which the prosecution bears the burden of disproving beyond a reasonable doubt and which can be raised pre-trial as a matter of law?" *Id.* at 163 (Ex. CC). The Supreme Court placed the case on the docket, *id.* at 188-91 (Exs. DD, EE), and, on March 8, 2021, denied the petition for writ of certiorari, *id.* at 201-02 (Ex. JJ).

Meanwhile, on September 4, 2020, Mr. Freeman, proceeding pro se, filed the present Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus. Doc. 1. He brings one claim for

relief: "My plea was not knowing, intelligent, and voluntary because the State withheld material, exculpatory evidence during plea negotiations." Doc. 1 at 5. After reviewing the petition according to Habeas Corpus Rule 4, the Court determined that the claim must be resolved on a full record and ordered the Attorney General of the State of New Mexico ("the State") to answer. Doc. 4. On November 23, 2020, the State filed its answer, arguing that the Court should dismiss the petition without prejudice because Mr. Freeman was still in the process of exhausting his remedies given the then-pending petition for writ of certiorari to the United States Supreme Court. Doc. 6. In a PFRD, I recommended rejecting this argument and instead staying the case until the Supreme Court resolved the appeal or denied the petition for certiorari. Doc. 6. Shortly thereafter, the State filed a notice informing the Court that the Supreme Court denied Mr. Freeman's petition for writ of certiorari. Doc. 10; *see also* Doc. 14-1 at 201 (Ex. JJ). Thus, when the Court adopted the PFRD, it also set a deadline for the State to file a supplemental answer addressing the merits of Mr. Freeman's petition. Doc. 11. The State filed its supplemental answer, Doc. 14, and this matter is ready for a decision.

## LEGAL STANDARD

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, a federal court may only grant a state prisoner's petition for a writ of habeas corpus where the prisoner is held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to Section 2254(d), when the prisoner's claims have been adjudicated on the merits in state court, such a petition can only be granted if the state court's decision was contrary to, or unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d). Such review must be "highly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet, that is because it was meant to be. . . . [Section] 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.

*Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (citations and internal quotation marks omitted). "The petitioner carries the burden of proof." *Cullen*, 563 U.S. at 181.

A § 2254(d)(1) analysis requires two steps: "First, as a 'threshold matter,' we must determine 'what constitutes clearly established Federal law, as determined by the Supreme Court of the United States.'" *Andrew v. White*, 62 F.4th 1299, 1310–11 (10th Cir. 2023) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)). "In step two, we consider whether the state court decision was contrary to or an unreasonable application of that clearly established federal law." *Id.* at 1311 (internal quotation marks and citation omitted). A state court decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision "unreasonably applies" clearly established federal law if it "correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* "Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but [also] objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *see also Bell*, 535 U.S. at 694 ("[A]n

6

unreasonable application is different from an incorrect one."). "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Welch v. Workman*, 639 F.3d 980, 1010 (10th Cir. 2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101. The state court need not cite to United States Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Indeed, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning" at all. *Harrington*, 562 U.S. at 98; *see also Cullen*, 563 U.S. at 187 ("Section 2254(d) applies even where there has been a summary denial."); *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) ("[W]e owe deference to the state court's *result*, even if its reasoning is not expressly stated.") (emphasis in original).

When determining whether a state decision was based on an unreasonable determination of facts in light of the evidence presented, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Welch*, 639 F.3d at 991 ("We presume the factual findings of the state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence.").

**ANALYSIS**

Mr. Freeman brings one claim in his Section 2254 petition: that his initial guilty "plea was not knowing, intelligent, and voluntary because the State withheld material, exculpatory evidence during plea negotiations." Doc. 1 at 5. Before addressing the merits of this claim, I will discuss two threshold matters: the "in custody" requirement and exhaustion.

**1. In Custody and Mootness**

Section 2254 provides a remedy when a petitioner is "*in custody* in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (emphasis added). The "in custody" requirement is jurisdictional. *Mays v. Dinwiddie*, 580 F.3d 1136, 1139 (10th Cir. 2009). The Supreme Court has "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack *at the time his petition is filed*." *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (emphasis added). Here, Mr. Freeman filed his petition on September 4, 2020. Doc. 1. At that time, he was not incarcerated but was on probation. Doc. 14-1 at 9 (Ex. B); *id.* at 18 (Ex. D). He, however, satisfied the "in custody" requirement because the Supreme Court has "held that a prisoner who had been placed on parole was still 'in custody' under his unexpired sentence." *Maleng*, 490 U.S. at 491 (citing *Jones v. Cunningham*, 371 U.S. 236 (1963)); *see also Hamilton v. Bird*, 650 F. App'x 585, 587 n.1 (10th Cir. 2016) (same for probation).

Although Mr. Freeman was "in custody" (by virtue of being on probation) at the time he filed his § 2254 petition, he currently is no longer in custody. Doc. 14 at 4 n.3 (State's supplemental answer, explaining that "Mr. Freeman was discharged from custody on October 22, 2020"). His discharge does not impact the "in custody" requirement, but does impact a related issue of mootness. The State does not argue that this case is moot but, because the issue is

8

jurisdictional, I nonetheless address it. *See Valenzuela v. Silversmith*, 699 F.3d 1199, 1204 (10th Cir. 2012) ("The mootness issue implicates our subject matter jurisdiction."). Once a petitioner's sentence has expired, "some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Collateral consequences are presumed if the petitioner challenges the validity of the underlying plea or conviction as opposed to a sentence calculation or parole revocation. *Id.* at 7-8; *see also Lane v. Williams*, 455 U.S. 624, 631 (1982) ("Since respondents elected only to attack their sentences, and since those sentences expired during the course of these proceedings, this case is moot."); *United States v. Hensel*, 377 F. App'x 748, 750 (10th Cir. 2010) ("[W]hen a defendant appeals the validity of his conviction, we presume that the consequences are sufficient to overcome any questions of mootness."). Because Mr. Freeman is challenging his underlying guilty plea, I recommend presuming that collateral consequences of his conviction exist such that this case is not moot.

**2. Exhaustion**

Under 28 U.S.C. § 2254(b), a petition for writ of habeas corpus cannot be granted "unless it appears that the applicant has exhausted the remedies available in the courts of the State." Exhaustion requires that a claim be pursued "through one complete round of the State's established appellate review process, giving the state courts a full and fair opportunity to correct alleged constitutional errors." *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011) (citation and quotations omitted). Said another way, "a state prisoner seeking federal habeas relief generally must have first submitted each of his claims to the State's highest court." *Jernigan v. Jaramillo*, 436 F. App'x 852, 855 (10th Cir. 2011). "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of

9

the conviction or in a post-conviction attack." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).

Here, Mr. Freeman has met the exhaustion requirement because he presented this issue to the New Mexico Supreme Court. *See* Doc. 14-1 at 89-120 (Ex. S); *id.* at 127-30 (Ex. V); *id.* at 131-32 (Ex. W). Indeed, the State does "not dispute that Mr. Freeman has satisfied the exhaustion requirement." Doc. 14 at 4 n.2.

### 3. *Brady* Violation

Turning to the merits of Mr. Freeman's claim for habeas relief, he asserts that his initial guilty plea "was not knowing, intelligent, and voluntary because the State withheld material, exculpatory evidence during plea negotiations." Doc. 1 at 5. He elaborates:

> I pled guilty because I believed that there was no evidence I could use to establish my entrapment defense. A few months after my plea, the State publicly disclosed that the case agent in my case, Joshua Marchand, had been under investigation by the FBI and that the State had received numerous reports that he was engaged in widespread entrapment and other misconduct. The State was in possession of the reports and other documents concerning the investigation prior to my indictment, but never disclosed the evidence. After the material became public, the State dismissed every pending case involving Joshua Marchand.

*Id.* In essence, Mr. Freeman is raising a claim for a *Brady* violation. *See, e.g.*, Doc. 14-1 at 105 (Ex. S) (state appeal, asking the court "to hold that a plea can be withdrawn based on a *Brady* violation").

Under *Brady v. Maryland*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). "*Brady*'s holding has since been extended to require disclosure by the prosecutor even when the defendant has not requested the withheld material or has made only a general request, and to cover impeachment evidence as well as exculpatory evidence." *United States v. Erickson*,

561 F.3d 1150, 1162 (10th Cir. 2009) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976) and *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "To establish that a *Brady* violation undermines a conviction, a convicted defendant must make each of three showings: (1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the State suppressed the evidence, either willfully or inadvertently; and (3) prejudice ensued." *Skinner v. Switzer*, 562 U.S. 521, 536 (2011) (internal quotations and citations omitted). When the first of these two elements are met, a defendant is "entitled to a new trial only if [he] establish[es] the prejudice necessary to satisfy the 'materiality' inquiry." *Turner v. United States*, 582 U.S. 313, 324, (2017) (internal citations and quotations omitted). And, "[e]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Id*. (internal quotations and citations omitted). "A 'reasonable probability' of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial." *Id*. (internal quotations and citations omitted).

Thus, the Supreme Court has made clear that the due process protections recognized in *Brady* are implicated at the time of trial. Here, the State acknowledges as much but argues that these due process protections are not implicated at the guilty plea stage of criminal proceedings. In support of its argument that it was not constitutionally required to disclose *Brady* material to Mr. Freeman prior to the execution of his plea agreement, the State cites *United States v. Ruiz*, 536 U.S. 622 (2002). Doc. 14 at 10. Regarding "*Brady* material" that falls in the category of impeachment evidence, the State is correct—the Supreme Court held in *Ruiz*, that a prosecutor's failure to disclose impeachment evidence before the execution of a plea agreement does not violate *Brady*. 536 U.S. at 623 ("The Constitution does not require the Government to disclose

11

material impeachment evidence prior to entering a plea agreement with a criminal defendant."); *see also id.* at 625 ("In this case we primarily consider whether the Fifth and Sixth Amendments require federal prosecutors, before entering into a binding plea agreement with a criminal defendant, to disclose impeachment information relating to any informants or other witnesses. We hold that the Constitution does not require that disclosure.").

Mr. Freeman's argument, however, is not that the State failed to disclose impeachment evidence. Instead, he argues that the evidence the State failed to disclose is material to his guilt or innocence, as it goes to an affirmative defense of entrapment.[4] The Supreme Court's focus on impeachment evidence in *Ruiz* did not resolve the question of whether a prosecutor has a constitutional obligation to disclose directly exculpatory evidence to a defendant before that defendant enters a guilty plea.[5] Since *Ruiz*, federal courts have divided on this question. *See* Kenneth M. Mogill, Lia N. Ernst, Allison L. Kriger & Morgan Schut, Examination of Witnesses,

---

[4] At his state court hearing on his motion to withdraw his guilty plea, Mr. Freeman argued that the State withheld information about Deputy Marchand related to both impeachment and an entrapment defense. *See* Doc. 7-3 at 17:19 to 18:5. Mr. Freeman, however, did not repeat the impeachment evidence argument on appeal or in his present § 2254 petition; instead, he argues only that the State withheld exculpatory evidence. *See* Doc. 14-1 at 105-06 (Ex. S); Doc. 1 at 5.

[5] In *Ruiz*, the fast-track plea agreement at issue required the defendant to waive the right to impeachment evidence as well as any information supporting an affirmative defense the defendant could raise if the case went to trial. 536 U.S. at 625. In reviewing that fast-track plea agreement, the Supreme Court focused its analysis on impeachment evidence, limiting its analysis of affirmative defense evidence to one sentence: "[I]n the context of this agreement, the need for this [affirmative defense] information is more closely related to the *fairness* of a trial than to the *voluntariness* of the plea; the value in terms of the defendant's added awareness of relevant circumstances is ordinarily limited; yet the added burden imposed upon the Government by requiring its provision well in advance of trial (often before trial preparation begins) can be serious, thereby significantly interfering with the administration of the plea-bargaining process." *Id.* at 633 (emphasis in original). This language stops short of holding, outside the context of the plea agreement at issue in *Ruiz*, that the government is not constitutionally obligated to disclose affirmative defense information before a defendant pleads guilty. To the extent this language applies to the present case, however, it tends to support the conclusion that the Constitution does not require the government to disclose this type of information before a defendant pleads guilty.

12

§ 2:7 Discovery—Discovery of Brady material—Applicability to plea-bargaining process (2d ed. 2022) ("One circuit has expressly held that *Brady* is exclusively a trial right and a defendant has no right to exculpatory evidence before entering a guilty plea, and at least three have expressed doubt that *Brady* applies to plea bargains. Three other circuits have indicated that the *Brady* right does attach to plea negotiations." (internal citations omitted)).[6]

---

[6] This publication cited *United States v. Ohiri*, 133 F. App'x 555 (10th Cir. 2005), in support of its conclusion that the Tenth Circuit is one of the three circuits which have "indicated that the *Brady* right does attach to plea negotiations." *Id.* § 2:7 at n.3. However, the Tenth Circuit limited its decision in *Ohiri* to the "unusual circumstances presented" in that case. 133 F. App'x at 562. Unlike in the present case, the defendant in *Ohiri* entered his guilty plea the same day jury selection was set to begin, a point at which *Brady* disclosure was due irrespective of any guilty plea. *Id.* at 562. This is significant because, in concluding that the government had no constitutional duty to disclose the credibility information at issue in *Ruiz*, the Supreme Court emphasized that a contrary rule would often require the government to prematurely disclose information related to ongoing investigations. *See Ruiz*, 536 at 631-32. Relatedly, in the present case, the FBI was conducting an ongoing investigation into Officer Marchand at the time Mr. Freeman pleaded guilty. *See* Doc. 14-1 at 83-88 (Ex. R) (Nolle Prosequi, filed in another case and incorporated into the record in Mr. Freeman's case, discussing the investigation into Officer Marchand). Thus, the circumstances that served as a primary motivation for the Supreme Court's decision in *Ruiz* (need to protect premature disclosure of a government investigation) also exist in the present case, but were absent from *Ohiri*. The unusual circumstances to which the Tenth Circuit limited its decision in *Ohiri* include a guilty plea that was entered the same day jury selection was scheduled to begin and where "the government should have disclosed all known exculpatory information at least by that point in the proceedings." 133 F. App'x at 562. Accordingly, *Ohiri*'s holding that exculpatory information should have been disclosed prior to the plea agreement is limited. Nonetheless, a review of cases in the Tenth Circuit does indicate that the Tenth Circuit favors the view that the government must provide a defendant directly exculpatory information before that defendant pleads guilty.

At least two Tenth Circuit cases published before *Ruiz* held that a prosecutor has a constitutional duty to disclose *Brady* material to a defendant before that defendant enters a guilty plea. *See United States v. Wright*, 43 F.3d 491, 495-96 (10th Cir. 1994) ("[U]nder certain limited circumstances, the prosecution's violation of *Brady* can render a defendant's plea involuntary."); *United States v. Walters*, 269 F.3d 1207, 1214 (10th Cir. 2001) (same). Like *Ruiz*, these cases involved impeachment information. *Wright*, 43 F.3d at 496-97; *Walters*, 269 F.3d at 1214. Therefore, their outcomes, and their partial holdings that a prosecutor has a constitutional duty to disclose *impeachment* information before the execution of a guilty plea, cannot withstand *Ruiz*. Whether the broad language used in their holdings (extending those holdings to directly exculpatory information even though such information was not at issue in those cases) survives

Regarding Mr. Freeman's petition, however, this circuit split is less important than the fact that the Supreme Court has not resolved it. That is, the Supreme Court has not decided that the due process protections it recognized in *Brady*, regarding directly exculpatory information, are implicated at the time a defendant enters a guilty plea. This means "as a threshold matter" Mr. Freeman failed to demonstrate the existence of "clearly established Federal law, as determined by the Supreme Court of the United States." *See Andrew v. White*, 62 F.4th 1299, 1310-11 (10th Cir. 2023) (internal quotation marks and citations omitted). Consequently, I recommend finding that his habeas petition fails.

If the Court disagrees with this conclusion, however, it should still deny Mr. Freeman's petition on alternative grounds. First, to the extent Mr. Freeman is arguing that the State failed to disclose evidence of Officer Marchand's drug use *that involved Mr. Freeman himself*, the state court held that, at the time Mr. Freeman entered his guilty plea, he was already aware of the facts on which he claims he would have predicated an entrapment defense. *See* Doc. 14-1 at 79-80 (Ex. Q). Nonetheless, Mr. Freeman still chose to plead guilty. *Id.* Thus, even if it were clearly established that at least some of the due process protections recognized in *Brady* are implicated at the plea stage, the state court found such information immaterial. This state court holding is

---

*Ruiz* is not a topic any subsequently published Tenth Circuit decision seems to have addressed. Unpublished Tenth Circuit cases decided after *Ruiz*, however, have stated that the government does have an obligation to disclose directly exculpatory information to a defendant before that defendant pleads guilty. *See Ohiri*, 133 F. App'x at 556; *United States v. Dahl*, 597 F. App'x 489, 490 (10th Cir. 2015) ("While we have recognized that 'under certain limited circumstances, the prosecution's violation of Brady can render a defendant's plea involuntary,' the government's duty to disclose in the context of a guilty plea extends only to material exculpatory evidence.") (citing *Wright*, 43 F.3d at 496)); *United States v. Ellsbury*, 528 F. App'x 856, 858 (10th Cir. 2013) ("[W]ith respect to non-impeachment evidence, a movant challenging the voluntariness of his plea must show that but for the failure to produce such information he would not have entered the plea but instead would have insisted on going to trial." (internal quotation marks and citations omitted)). However, only one of these unpublished cases, *Ohiri*, dealt with directly exculpatory information.

not contrary to or an unreasonable application of *Brady*. Second, to the extent Mr. Freeman is arguing that the State failed to disclose information regarding Officer Marchand's drug use *with other people*, such information is better characterized as credibility evidence, not exculpatory evidence, and so *Ruiz* dictates a conclusion that the Constitution did not require disclosure at the guilty plea stage.

As to the first point, in denying Mr. Freeman's motion to withdraw his guilty plea, the state district court reasoned that the facts Mr. Freeman claims would support an entrapment defense were facts about which Mr. Freeman was aware when he chose to forego that defense and to instead accept the State's beneficial plea offer.[7] Doc. 14-1 at 79-80 (Ex. Q). At the hearing, the court elaborated:

> What I just heard you [defense counsel] say is that your client [Mr. Freeman] would be -- you know, as an offer of proof, I guess, is your client would say that

---

[7] Mr. Freeman presented his *Brady* argument to the state district court, Doc. 14-1 at 22 (Ex. F), which held a hearing, Doc. 7-3, and issued a written order summarizing its ruling, Doc. 14-1 at 79-80 (Ex. Q). Mr. Freeman then also presented his *Brady* argument to the New Mexico Supreme Court in a petition for writ of certiorari. Doc. 14-1 at 90 (Ex. S). The New Mexico Supreme Court denied his petition in a one-page order, without explaining its reasoning. *Id.* at 144 (Ex. Y). "A federal habeas court reviewing an unexplained state-court decision on the merits should 'look through' that decision to the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1190 (2018). Consistent with this Supreme Court mandate, I have "looked through" the New Mexico Supreme Court's decision to the state district court's decision on the motion to withdraw plea.

Further, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Here, there is no indication or state-law procedural principle to overcome the presumption that the New Mexico Supreme Court made a decision on the merits. Indeed, while the New Mexico Court of Appeals proposed dismissing the appeal for lack of jurisdiction over a post-conviction motion, Doc. 14-1 at 78 (Ex. Q), it ultimately transferred the appeal to the New Mexico Supreme Court, the court with jurisdiction to hear the post-conviction appeal, *id.* at 129 (Ex. V).

> he used drugs with Marchand, and that he was a user, and not inclined to sell drugs, but for Marchand getting him to do so.
>
> He knew that before he decided to take the plea. He knew -- presumably -- I mean, he presumably knew that he used drugs with Marchand. He presumably knew that he chose to -- you know, that he didn't -- you know, he wasn't inclined to sell drugs, but for the urging of Marchand, and -- and -- and certainly, it was known at the time that he took the plea that Marchand was the undercover and -- and the source of these charges. And so, I find that his -- his plea is knowing and voluntary.
>
> . . . .
>
> But if you're [defense counsel] telling me the Defendant [Mr. Freeman] is prepared to testify that he used drugs with Marchand and that he would not have been inclined to sell them, I mean, that was also -- and the fact that you, as a new counsel coming in, would -- would -- would say, "Oh, well, I would have raised the issue," [of entrapment] it -- it may well be that -- that -- that -- that Ms. Gerads [prior defense attorney] was prepared to raise the issue, but, you know, then you're presented with a beneficial plea, and that's not -- that doesn't mean you're not -- it's not knowing or voluntary. That just means that you choose -- you choose Option A over Option B. And we're not going to undo everything that happens simply because a defendant has chosen Option A over Option B.
>
> The Court finds that there is nothing presented to the Court today that indicates that his plea was not knowing, voluntary and intelligent, and there is no reason to set it aside, and the Motion is denied.

Doc. 7-3 at 18:21 to 19:9; 20:23 to 21:12. That is, the state court found that the information Mr. Freeman claimed should have been disclosed was immaterial.

The state court's decision to deny Defendant's motion to withdraw his guilty plea was not contrary to or an unreasonable application of *Brady* or any other clearly established federal law.[8] As the state court noted, if Officer Marchand used drugs with Mr. Freeman, Mr. Freeman would be aware of this fact. That is, he already possessed the very facts he claims the State withheld.

---

[8] While the state court's order does not specifically cite *Brady*, under § 2254 review, it need not cite to United States Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Because Mr. Freeman possessed these facts from before the inception of his case, the State's alleged failure to disclose to Mr. Freeman that which Mr. Freeman already knew does not constitute a *Brady* violation. *See United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009) ("[A] defendant is not denied due process by the government's nondisclosure of evidence if the defendant knew of the evidence anyway."); *United States v. Quintanilla*, 193 F.3d 1139, 1149 (10th Cir. 1999) ("[A] defendant's independent awareness of the exculpatory evidence is critical in determining whether a *Brady* violation has occurred. If a defendant already has a particular piece of evidence, the prosecution's disclosure of that evidence is considered cumulative, rendering the suppressed evidence immaterial.").

As to the second point, Mr. Freeman's argument also extends to facts he did not know at the time he entered his guilty plea; specifically, that Officer Marchand also used drugs with targets of other investigations. Unlike the personal knowledge Mr. Freeman would have about his own drug use with Officer Marchand, Mr. Freeman would have no way of knowing about Officer Marchand's drug use with others. But Mr. Freeman cannot credibly claim that Officer Marchand's drug use with *others*, about which he was unaware, entrapped *him*. Therefore, evidence of Officer Marchand's drug use with others could not serve as the foundation on which Mr. Freeman could build an entrapment defense.

Evidence of Officer Marchand's drug use with others certainly could be used to *impeach* Officer Marchand—i.e., to test his credibility. But the Supreme Court has made clear that any failure by the State to produce such impeachment evidence prior to a guilty plea does not violate *Brady*. *See Ruiz*, 536 U.S. at 623. Therefore, if information that Officer Marchand used drugs with others is characterized as impeachment evidence, Supreme Court precedent forecloses Mr. Freeman's argument.

Faced with *Ruiz*, Mr. Freeman appears to argue that the information he did not have was more than just impeachment information. That is, he appears to argue that such information could have bolstered his entrapment defense. And, if he were entrapped, he could not have independently formed the requisite criminal intent to support the charges against him, meaning he is not guilty. Because he did not have evidence to bolster an entrapment defense, he asserts, he believed he could not show entrapment; thus, he pleaded guilty. *See* Doc. 1 at 5. Evidence that affected Mr. Freeman's assessment about the likely success of an entrapment defense, however, is different than evidence showing Mr. Freeman was indeed entrapped (which would directly bear on the question of Mr. Freeman's guilt or innocence).

In arguing that the prosecutor deprived him of information that he could have used to *bolster* an entrapment argument, Mr. Freeman is arguing that the State deprived him of information through which the jury might find his entrapment assertion more credible. This argument is similar to the withheld information at issue in *Ruiz*, in that it is collateral information that bears on the credibility of a witness. *See also United States v. Dighera*, 217 F. App'x 826, 827 (10th Cir. 2007) (finding that evidence of a law enforcement officer's alleged dishonest practices in collecting evidence against suspects other than the defendant would "at best provide some impeachment evidence" (cleaned up)).

Further, such bolstering evidence does not directly bear on Mr. Freeman's potential entrapment defense. As the state court recognized, the evidence that directly bore on Mr. Freeman's potential entrapment defense was the information already in his possession—that Officer Marchand used drugs with him during the conduct that led to the charges against Mr. Freeman and ultimately to Mr. Freeman's guilty plea. And, as the state court held, Mr. Freeman elected not to assert entrapment as a defense despite being aware of the facts on which such a

defense would be predicated. *See Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) ("There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information." (internal quotation marks and citation omitted)).

Thus, even assuming *Brady* applies to directly exculpatory information at the plea stage, the Court should reject Mr. Freeman's characterization that Officer Marchand's drug use with others constitutes directly exculpatory information. This information is more akin to the impeachment information described in *Ruiz*, which the Supreme Court held the government does not have to disclose at the plea stage.

Finally, Mr. Freeman's habeas petition fails because Mr. Freeman makes no argument as to how the state court's decision was contrary to or an unreasonable application of clearly established federal law. That is, Mr. Freeman fails to meet his burden on this §2254 petition. He does not explain how the state court misapplied *Brady* or show that the state court decided his case differently than the Supreme Court has done "on a set of materially indistinguishable facts." *Bell*, 535 U.S. at 694. Additionally, Mr. Freeman fails to show that the state court's decision was based on an unreasonable application of the facts in light of the evidence presented. I, therefore, recommend rejecting his claim.

## RECOMMENDATION

For these reasons, I recommend denying Mr. Freeman's "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" (Doc. 1) and dismissing the petition with prejudice. I also recommend that the Court make this decision without holding an evidentiary hearing because the claim can be resolved on the record. *See Anderson v. Attorney General of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005). Lastly, I recommend finding that Mr.

Freeman is not entitled to a certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (finding that to be entitled to a certificate of appealability, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further").

_____
Steven C. Yarbrough
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**